

# THE ATTORNEY GENERAL
# OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

August 15, 1990

Mr. Ron Lindsey
Commissioner
Texas Department of Human
   Services
P. O. Box 149030
Austin, Texas  78714-9030

Opinion No. JM-1207

Re: Obligation of a metro-
politan transit authority with
regard to medicaid recipients
(RQ-1793)

Dear Mr. Lindsey:

    The Department of Human Services ("the department")  is
the state agency designated to administer the medical
assistance ("medicaid") program in Texas. See Hum. Res.
Code ch. 32.  The department administers state funds
appropriated for the program as well as federal matching
funds available under title 42, chapter 7, subchapter XIX,
of the United States Code (sections 1396, et seq.).  Federal
funds are made available only upon federal approval of a
"state plan" for administration of the program at the state
level.  42 U.S.C.  § 1396.  You refer to a provision among
those in the Code of Federal Regulations implementing the
medicaid program, 42 C.F.R. § 431.53, which provides as
follows with respect to a state's participation in the
medicaid program:

        A State plan must–

        (a)  Specify that the Medicaid agency will
   assure necessary transportation for reci-
   pients to and from providers; and

        (b)  Describe the methods that will be
   used to meet this requirement.

    You advise that the department pursuant to its state
plan provides transportation to medicaid recipients to and
from medicaid service providers by prepurchasing bus tickets
"in bulk" from various transportation authorities in the
state for the use of medicaid recipients. We understand you
to say that certain of these transportation authorities --
metropolitan rapid transit authorities and regional trans-
portation authorities -- charge the department more per
ticket for such bulk prepurchased tickets than they do for
individual tickets ordinarily sold to members of the general

public.  You express concern that the charging of additional amounts for bulk tickets prepurchased by the department constitutes discrimination by the transit authorities in question.  You ask whether such transit authorities are required to provide the bulk prepurchased tickets to the department at the same cost per ticket as would be imposed by the authorities on members of the general public.

We will assume for purposes of the following discussion that the transit authorities about which you are concerned are ones operating under articles 1118x, 1118y, or 1118z, V.T.C.S., providing for "metropolitan rapid transit authorities," "regional transportation authorities," and "city transit departments" respectively.  Each of these articles provides that the transportation entity "shall establish and maintain rates, fares, tolls, charges, rents, or other compensation for the use of the facilities of the system acquired, constructed, operated, or maintained by the authority which shall be reasonable and nondiscriminatory." V.T.C.S. arts. 1118x, § 6(j); 1118y, § 10(j); 1118z, § 6(f).

It is certainly possible that this language would prohibit a transit authority from charging the department more for bulk prepurchased bus tickets for medicaid recipients than it does for tickets for the general public. However, various factual considerations might have a bearing on a court's resolution of this issue.  For example, the sale by a transit authority of the kind of bulk tickets in question might conceivably involve costs to the authority over and above those ordinarily involved in the sale of tickets to the general public.  Also, whether the authority also sells bulk prepurchased tickets to other persons or organizations, and if so, whether such sales are made at prices comparable to those charged the department, might have a bearing on whether the practices of the authority are discriminatory or reasonable under the applicable statutes. We are unable in the opinion process to make findings of fact.  While we have received correspondence in connection with your request from one transit authority indicating that that authority does not engage in the practice you complain of, we have received no information or explanations from any authorities engaged in this practice as to why they charge the department more per ticket for the bulk prepurchased tickets than they do members of the general public for tickets purchased individually.

We note that federal law applicable to transportation authorities receiving federal funds contains nondiscrimination provisions similar to those of the state statutes referred to above.  The transportation authorities about which you complain may receive federal funding under the

Urban Mass Transportation Act.   See 49 U.S.C. §§ 1607a (block grants), 1614 (grant program for areas other than urbanized areas).   Title 29, section 794, of the United States Code, provides that

> [n]o otherwise qualified individual with handicaps in the United States . . . shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency . . . .

Title 49, section 1615(a)(1), of the United States Code, a part of the Urban Mass Transportation Act, provides:

> No person in the United States shall on the grounds of race, color, creed, national origin, sex, or age be excluded from participation in, or denied the benefits of, or be subject to discrimination under any project, program, or activity funded in whole or in part through financial assistance under this chapter.   (Emphasis added.)

We understand that many of the medicaid recipients for whom bus tickets are prepurchased in bulk by the department are handicapped or aged individuals.   See 29 U.S.C. § 706(7) (definition of handicapped individual); 42 U.S.C. § 1396 (purpose of medicaid program is "to furnish medical assistance on behalf of families with dependent children, and of aged, blind, or disabled individuals").   But again, we think that whether such individuals are discriminated against "solely by reason of (their) handicap(s)" within the meaning of section 794, or "on the grounds of . . . age" under section 1615(a)(1), in connection with the transit authority practices about which you complain, may involve factual issues which we in the opinion process would be unable to resolve, as discussed above with respect to the nondiscrimination provisions of articles 1118x, 1118y and 1118z.[1]

---

1.   Section 1615 further provides for action the U.S. Secretary of Transportation and/or the U.S. Attorney General may take if it is determined that "any person" is engaged in practices in violation of the section's anti-discrimination
(Footnote Continued)

You refer in your request to one of the provisions of the Code of Federal Regulations adopted to implement the federal medicaid laws, 42 C.F.R. § 447.325, which provides with respect to a state agency administering a state's medicaid program, such as the department here, that "[t]he agency may pay the customary charges of the provider [of medicaid services] but must not pay more than the prevailing charges in the locality for comparable services under comparable circumstances." See 42 C.F.R. § 400.202 (defining "provider" and "services," the latter definition referring in turn to the list of medicaid covered services in title 42, section 1396d, of the United States Code). Those covered services include in addition to those specified "any other medical care, and any other type of remedial care recognized under state law, specified by the secretary [of Health and Human Services]." 42 U.S.C. § 1396d(a)(21). It appears that the secretary has specified in title 42, section 440.170, of the Code of Federal Regulations that certain transportation services, including those of a common carrier, necessary to the securing of medical examinations and treatment by a medicaid recipient are covered services for which federal funding may be obtained. See also Smith v. Vowell, 379 F.Supp. 139 (1974) (state's duty to provide for transportation for medicaid recipients).

However, the directive in title 42, section 447.325, of the Code of Federal Regulations, quoted above, goes to the state agency's authority to pay for medicaid services and not to a provider's right to seek to impose given charges for those services. Further, whether the bulk sale of tickets is comparable to other sales of tickets is a fact issue that we cannot resolve. See the above discussion regarding nondiscrimination provisions of V.T.C.S. articles 1118x, 1118y, and 1118z, and title 29, section 794, of the United States Code.

Similarly, title 42, section 1604(m), of the United States Code provides that the United States Secretary of Transportation may not approve federal funding of transportation projects unless the applicant gives satisfactory assurances that reduced rates will be charged

---

(Footnote Continued)
provision. It might be advisable for the department to apprise the secretary of transportation or the attorney general of the transportation authority practices which are the subject of your request, so that those officials may investigate and take appropriate action under section 1615.

handicapped and elderly individuals. Again, it is our understanding that many of the medicaid recipients receiving transportation services are elderly or handicapped. See 42 U.S.C. § 1396 (purpose of medicaid program). Again, however, whether the practice you describe could jeopardize a transit authority's eligibility for federal funds requires the resolution of fact issues.

In addition to the statutes and regulations discussed above, a court if presented with this issue might also entertain the argument that the transit authority practices of which you complain violate constitutional Equal Protection principals. But again, we think that whether these practices constitute Equal Protection violations would probably involve questions of fact, which we in the opinion process would be unable to resolve.

### S U M M A R Y

Whether a transit authority may legally charge the Department of Human Services more per ticket for bulk prepurchased bus tickets for medicaid recipients than it charges members of the general public for individually prepurchased tickets would probably involve factual issues that cannot be resolved in an attorney general opinion.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by William Walker
Assistant Attorney General